# UNITED STATES DISTRICT COURT
For the
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CONTRINA LACRETRICA BELL | ) |
| | ) |
| *Plaintiff,* | ) |
| vs. | ) |
| | ) Cause No: 3:24-cv-06493-SAL-SVH |
| SOUTH CAROLINA STATE HOUSING | ) |
| FINANCE AND DEVELOPMENT AUTHORITY; | ) |
| AKA SC HOUSING AUTHORITY. | ) |
| | ) |
| *Defendants.* | ) |

## PLANTIFF'S COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW, person CONTRINA LACRETRICA BELL, presented by woman Contrina Lacretrica Bell, allege and state as follows: (**Please note that spelling of each name is important and will always be as above throughout this complaint for clarity in the court.**)

RCV'D - USDC COLA SC
NOV 15 '24 AM 10:07

### I.     Introduction

1. The plaintiff's cause of action is brought before this Honorable Court for actual, statutory, and punitive damages, against Defendant SOUTH CAROLINA STATE HOUSING FINANCE AND DEVELOPMENT AUTHORITY (hereafter, collectively "SC HOUSING"), for peonage by subjecting plaintiff to being held in debt servitude due to fraud, pursuant to 18 U.S.C. § 1581, et al., under the threat of foreclosure.

### II.     JURISDICTION AND VENUE

1. Through the power of naturalization, found in 8 U.S.C.§ 1101(a)(23), Contrina Lacretrica Bell confers the nationality of the State called "STATE OF SOUTH

1

CAROLINA" on CONTRINA LACRETRICA BELL, after birth, by any means whatsoever. This satisfies the jurisdictional requirements of the court.

2. Contrina Lacretrica Bell confers that CONTRINA LACRETRICA BELL will be on a general appearance. Contrina Lacretrica Bell will be speaking on behalf of CONTRINA LACRETRICA BELL because CONTRINA LACRETRICA BELL is incapable of speaking or writing.

3. SC HOUSING is a person doing business in "STATE OF SOUTH CAROLINA," through the power of naturalization, and is within the jurisdiction of this Honorable Federal Court.

### III.   PARTIES

4. Plaintiff is a person residing in Richland County, South Carolina.

5. Plaintiff resided in Richland County, South Carolina, at all times relevant and all actions related to Plaintiff's stated herein took place in and around Richland County, South Carolina.

6. Defendant's Principal Place of business is 301-C Outlet Pointe Blvd, Columbia South Carolina 29210. Defendant conduct business in the State South Carolina.

7. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

8. Defendant's agents, employees, officers, members, directors, and representatives were working within the course and scope of their employment when taking the actions stated herein.

### IV.   GENERAL FACTUAL ALLEGATIONS

9. CONTRINA LACRETRICA BELL has a loan # 0000111328 with SC HOUSING.

10. Contrina Lacretrica Bell gave permission to SC HOUSING to access and use the credit of CONTRINA LACRETRICA BELL.

11. For many years, these accounts were improperly performed on by Contrina Lacretrica Bell on behalf of CONTRINA LACRETRICA BELL.

12. Improper performance was by submitting extraneous negotiable instruments called Federal Reserve Notes.

13. Proper performance would have been to indorse the original collateral securities under special negotiation, prior to them being exchanged for Federal Reserve Notes.

14. Contrina Lacretrica Bell failed to do a special indorsement on the original collateral securities.

15. Had Contrina Lacretrica Bell known, Contrina Lacretrica Bell would have done special indorsements on these collateral securities all the way from the beginning.

16. Contrina Lacretrica Bell never intended to do ANY blank indorsements on behalf of CONTRINA LACRETRICA BELL.

17. Proper performance is done primarily through clear orders and special indorsements.

18. Improper performance is done via blank indorsements and lack of order.

19. Proper performance balances the accounting.

20. Improper performance unbalance the accounting.

21. There were promissory notes made on these loans.

22. A promissory note is an unconditional promise to pay.

23. The promissory notes are negotiable instruments.

24. "Promissory note" and "note" mean the same thing.

25. Federal Reserve Notes are promissory notes.

26. Federal Reserve Notes are negotiable instruments.

27. All promissory notes are collateral securities in accordance with 12 U.S.C. § 412.

28. Each month there was a billing statement generated on the above accounts.

29. A "billing statement" is an unconditional order to pay.

30. A "billing statement" or "bill" or any similar language, is another term describe a "bill of exchange".

31. An unconditional order to pay is a bill of exchange.

32. A bill of exchange is a negotiable instrument.

33. Bills of exchange are collateral securities in accordance with 12 U.S.C. § 412.

34. All promissory notes produced by CONTRINA LACRETRICA BELL are under the purview of 18 U.S.C. § 8.

35. All bills of exchange sent to CONTRINA LACRETRICA BELL are under the purview of 18 U.S.C. § 8.

36. The Federal Reserve Bank is the custodian to pay on behalf of obligations or other securities of the United States (18 U.S.C. § 8).

37. Attorney-in-fact Contrina Lacretrica Bell sent orders that were received by SC HOUSING.

38. Parcel was received 9/9/2024 by Julie Jones

39. Inside the Parcel contained a series of orders that described how all previous blank indorsements on all negotiable instruments were being converted to special indorsements due to fraud.

40. This fraud was due to a complete lack of disclosure of the terms of the loan as well as the collateralization of the original promissory note.

41. The order inside this parcel constitutes unconditional tender of payment in accordance with UCC 3-603.

42. The term "US dollars" includes Federal Reserve Notes.

43. Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement. The orders inside the parcel were a payment for US dollars.

44. An unconditional order to pay Is a bill of exchange. The orders sent by Contrina Lacretrica Bell are an unconditional order to pay on this account.

45. Inside the Limited Power of Attorney ("LPOA") contained a special indorsement for all past, present and future negotiable instruments of:

**WITHOUT RECOURSE**

Pay to the Order of:

CONTRINA LACRETRICA BELL

By:/s/ Contrina Lacretrica Bell, agent

46. CONTRINA LACRETRICA BELL is now the person entitled to enforce all negotiable instruments on all the above accounts.

47. CONTRINA LACRETRICA BELL is now the holder in due course regarding all negotiable instruments on all the above accounts.

48. Any previous arbitration clauses or agreements are hereby void due to the extreme alleged felonies and fraud associated with this case. Also, any real property involved in this case are no longer collateral on any loans due to the original collateral securities (notes) being the only collateral needed to secure the loan.

## V. COUNT ONE – BREACH OF CONTRACT:

49. Plaintiff realleges and restated the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-49.

50. Contrina Lacretrica Bell was attempting to perform on the accounts.

51. The definition of "payment" is: "The fulfillment of a promise, or the performance of an agreement".

52. One definition for "tender" is: "The offer of performance, not performance itself, and, when unjustifiably refused, places other party in default and permits party making tender to exercise remedies for breach of contract".

53. The above definition is in accord with UCC 3-603(b)

54. Contrina Lacretrica Bell previously submitted another entire promissory note in order to perform on the mortgage.

55. The tender of Contrina Lacretrica Bell was ignored.

56. This promissory note was retained by SC HOUSING.

57. Had someone spoken to Contrina Lacretrica Bell about her options, she would have done a special indorsement on any instruments to properly perform.

58. Contrina Lacretrica Bell desperately wanted to perform. This is shown by her attempts to perform.

59. This situation being ignored is evidence of dishonor.

60. This dishonor caused anxiety and depression due to Contrina Lacretrica Bell not getting the information needed to properly move forward and clarity or complete her attempt to perform.

## VI.    COUNT TWO- BREACH OF FIDUCIARY DUTIES

61. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-61.

62. CONTRINA LACRETRICA BELL is the beneficiary of SC HOUSING.

63. SC HOUSING has a fiduciary duty to the financial success of CONTRINA LACRETRICA BELL.

64. SC HOUSING is paid to ensure the law is correctly applied in respect to beneficiary CONTRINA LACRETRICA BELL.

65. SC HOUSING has an obligation and desire to ensure that UCC Article 3 is properly followed.

66. SC HOUSING has an obligation and desire to ensure that the Emergency Banking Act of 1933 is followed.

67. Once presented with orders or conditional acceptances above, SC HOUSING never attempted to clarify or perform for Contrina Lacretrica Bell or CONTRINA LACRETRICA BELL.

68. SC HOUSING follows 12 U.S.C § 412.

69. SC HOUSING has had access to Federal Reserve Window services according to the Federal Reserve Master Account and Services Database.

70. SC HOUSING acknowledges that it would be in the best interest of their beneficiaries to do special indorsements on negotiable instruments.

71. SC HOUSING acknowledges that, if clients knew how to do a special indorsement, a vast majority would do it.

72. SC HOUSING never mentioned to either Contrina Lacretrica Bell or CONTRINA LACRETRICA BELL about the benefits of special indorsements.

73. This harmed CONTRINA LACRETRICA BELL by now having an imbalanced account and having to work to acquire extraneous and entirely irrelevant Federal Reserve Notes, then send them in to SC HOUSING to "pay" the accounts.

74. This breach of fiduciary duty has caused years of anxiety over the extraneous paying of bills that is entirely unnecessary.

## VII.    COUNT THREE-12 U.S.C. § 504 (CIVIL MONEY PENALTY- FEDERAL RESERVE ACT):

75. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-75.

76. This statute is involved because SC HOUSING never attempted to work with Contrina Lacretrica Bell's performance.

77. This Civil Money Penalty is collected and deposited into the Treasury, so plaintiff intends to send a copy of this complaint to the SEC, Federal Reserve, Office of the Comptroller as well as the Treasury for inspection and collection. PLANTIFF IS WILLING TO FOREGO THIS STEP IF DEFENDANT IS WILLING TO QUICKLY AND RAPIDLY ASSIST US IN OUR PRIOR ORDERS FOR THE EXCHANGE OF COLLATERAL SECURITIES (DEFENDANTS CAN SIMPLY PLACE "N/A" ON THIS LINE ITEM FOR ANSWER).

## VIII.    COUNT FOUR-18 U.S.C. § 1956 (LAUNDERING OF MONETARY INSTRUMENTS):

78. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-78.

79. Plaintiff became the person entitled to enforce these instruments once negotiation was rescinded and clarified.

8

80. Plaintiff became the holder in due course of these instruments once negotiation was rescinded and clarified.

81. Illegal possession and transfer of above negotiable instruments are retained currently with defendant SC HOUSING.

## IX. COUNT FIVE-18 U.S.C. § 2314 (TRANSPORTATION OF STOLEN SECURITIES):

82. Plaintiff realleges and restates the foregoing jurisdiction allegations and general factual allegations in paragraph 1-82.

83. Unknown negotiation via a black indorsement allowed SC HOUSING to take possession of all collateral securities on these accounts.

84. This transportation should have been done under special negotiation and should have been temporary until the application for notes via 12 U.S.C. § 412 was completed at the Federal Reserve Window.

85. Each individual credit transaction on these accounts would be a separate change of this felony.

86. The promissory note that was sent in by Contrina Lacretrica Bell was never returned and also never credited to the account as a payment (purloined).

## X. COUNT SIX-18 U.S.C. § 1348 (SECURITIES AND COMMODITIES FRAUD):

87. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraph 1-87.

88. Plaintiff was never informed as to these instruments being negotiable.

89. Plaintiff was never informed of varies optional indorsements in accordance with UCC Article 3.

90. Plaintiff has a responsibility to avail himself of her optional indorsements, but SC HOUSING could have spent a very short period of time to educate plaintiff about indorsements as a part of their fiduciary duties.

91. Contrina Lacretrica Bell has clarified and ordered all current and future negotiation while rescinding all previous blank negotiation under fraud.

92. Fraud is due to complete failure to disclose the terms and options of signing/indorsing above collateral securities.

93. This damages plaintiff materially due to valuable instruments being purloined and not available for plaintiff.

94. Due to Contrina Lacretrica Bell's signature being the birth of value for all the above negotiable instruments, Contrina Lacretrica Bell and CONTRINA LACRETRICA BELL are the secured parties for all transaction in this deal.

95. Each individual credit transaction on these accounts would be a separate charge of this felony.

## XI.    COUNT SEVEN-18 U.S.C. § 1581 (PEONAGE):

96. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-96.

97. Plaintiff was forced to work and perform under this contract as "debt" when the debt was only existing due to a failure to use a special indorsement on the original note.

98. Plaintiff had to work or find entirely irrelevant negotiable instruments in order to falsely satisfy "performance" on this account.

99. SC HOUSING made it appear that plaintiff was in debt by failing to help the plaintiff do a special indorsement.

100. SC HOUSING has threatened the plaintiff with foreclosure if plaintiff failed to "perform" within the false contract of needing to tender extraneous Federal Reserve Notes.

## XII. COUNT EIGHT- 18 U.S.C.§ 1583 (ENTICEMENT INTO SLAVERY):

101. Plaintiff realleges and restates the foregoing jurisdiction allegations and general factual allegations in paragraphs 1-101.

102. Due to a failure to do a special indorsement (which could have easily been done). Plaintiff was enticed into having to pay each month using irrelevant and extraneous negotiable instruments called Federal Reserve Notes.

103. Plaintiff was intimidated with fear of losing her home to perform in an absolutely unnecessary way (slavery).

104. Plaintiff got absolutely no equal consideration in exchange for her collateral securities and negotiable instruments beyond the facilitation of security swaps and transfers.

105. SC HOUSING could have informed plaintiff of her options to do a special indorsement rather than a blank indorsement.

106. Due to ease of which SC HOUSING could have helped and informed the plaintiff of a special versus blank indorsement, it is assumed that the intent was to entice the plaintiff into slavery.

## XIII. COUNT NINE-18 U.S.C. § 1584 (SALE INTO INVOLUNTARY SERVITUDE):

107. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraph 1-107.

108. Due to the financial gain of having the plaintiff do a blank indorsement rather than a special indorsement on the original collateral security, SC HOUSING had financial motive to ensure plaintiff indorsed with a blank indorsement.

109. Intent to have plaintiff sign with a blank indorsement was pre-conceived by SC HOUSING.

110. Intent to have plaintiff do a blank indorsement allowed SC HOUSING to take possession of the collateral securities without it being legally considered theft.

111. While not legally theft, that transaction was not equal consideration.

112. Due to the terms being so vague (uncommunicated), this can be construed as coercion and fraud.

113. Plaintiff was left in a situation where she felt compelled to provide entirely irrelevant Federal Reserve Notes in order to prevent foreclosure on her property.

## XIV.   CONT TEN-18 U.S.C. § 1589 (FORCED LABOR):

114. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraph 1-114.

115. 18 U.S.C § 1589 includes forced services.

116. Plaintiff was forced to provide entirely irrelevant Federal Reserve Notes after her collateral security was purloined via a blank indorsement.

117. SC HOUSING should have been providing a service of swapping the collateral security under special negotiation.

118. Contrina Lacretrica Bell would have been more than happy to pay a small swap fee for the service of exchanging the collateral security at the Federal Reserve Window.

119. Instead, the plaintiff was forced to perform each month unnecessarily under the threat of punishment (foreclosure).

## XV. COUNT ELEVEN- 18 U.S.C. § 1593A (BENEFITTING FINANCIALLY FROM PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS):

120. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraph 1-120.

121. SC HOUSING benefits from a blank indorsement by being able to keep all the Federal Reserve Notes after the application for notes is complete (12 U.S.C § 412).

122. SC HOUSING benefits from a blank indorsement by being able to take back the property through foreclosure if the plaintiff was unable to supply irrelevant and extraneous Federal Reserve Notes each month.

123. SC HOUSING pretends it is the "lender" by claiming the collateral security, after it is released with a blank indorsement.

124. Under special negotiation, CONTRINA LACRETRICA BELL is actually the lender and Contrina Lacretrica Bell is the borrower. SC HOUSING is just a currency exchange at this point and facilitates Federal Reserve services.

125. SC HOUSING collects substantially more Federal Reserve Notes by carefully failing to inform their beneficiaries of their indorsement options.

126. Due to lack of terms and communications, it is assumed that SC HOUSING intends to entice its beneficiaries into slavery for financial gain.

## XVI. DEMANDS FOR RELIEF

127. Full discharge of all above loans in their current state.

128. Full release of interest and liens on the property.

129. Full refund of each individual extraneous payment made on the account using Federal Reserve Notes.

130. $50,000,000.00 (fifty million) in damages. Payable in Federal Reserve Notes.

## XVII. SUMMARY

NOW, THEREFORE, in accordance with the pertinent legal provisions and in the interest of justice, the Plaintiff respectfully request the Honorable Court to issue an Order for the award of monetary damages against the Defendant, SC HOUSING. The Plaintiff further seeks any additional and appropriate relief that this Court, in its wisdom, may consider just and equitable given the circumstances at hand.

THE PLAINTIFF ENTERS THIS COURT PROCEEDING WITH A CONSTRUCTIVE INTENT, VESTED IN THE DESIRE TO COLLABORATE WITH THE DEFENDANT TOWARDS A FAIR AND EQUITTABLE CONCLUSION.

RESPECTFULLY SUBMITTED,

BY: /s/ Contrina Lacretrica Bell

Contrina Lacretrica Bell   *without prejudice*

DATED: November 11, 2024

Plaintiff, Pro Se

Bell.Contrina@gmail.com

(803) 565-0711